FRANK A. LEARY *v.* HERMAN J. WEISMAN ET AL.

SUPERIOR COURT      NEW HAVEN COUNTY      FILE NO. 21230
AT WATERBURY

Memorandum filed September 4, 1956.

*Charles Lyman,* of New Haven, for the plaintiff.

*Edward J. McDonald* and *John S. Monagan,* both of Waterbury, for the defendant Daniel Leary.

*Healey & Healey,* of Waterbury, for Citizens & Manufacturers National Bank, garnishee.

*Herman J. Weisman, Jr.,* of Waterbury, for Lux Clock Mfg. Co. and The Watertown Mfg. Co., garnishees.

*Carmody & Torrance,* of Waterbury, for The Waterbury Trust Co., garnishee.

TROLAND, J. This is an action in tort claiming damages for alleged wrongful acts of the defendants, acting in concert, against the plaintiff, during the period commencing about January 1, 1953, and continuing to the date of the complaint, August 13, 1953.

To pass on the merits of plaintiff's exceptions to the report of the referee requires first a determination of the issues in the present action. The issues may be clarified and high-lighted by a statement of the situation and circumstances of the parties prior to the period of the proceedings complained about, as established by the pleadings and such facts found by the referee as are not in dispute or are conceded.

### BACKGROUND

The defendant Daniel J. Leary was a defendant in the so-called Waterbury Conspiracy Case (*State* v. *Hayes,* 127 Conn. 543.) At the commencement of said prosecution the defendant Leary was principal owner and in control of Diamond Ginger Ale, Inc., a prosperous corporation in Waterbury, Connecticut, and at said time the plaintiff, Frank Leary, brother of said defendant, was an employee of said corporation. The defendant Daniel J. Leary was convicted in said prosecution, and thereafter was absent from this state for several years, and later for a long period of time was in confinement at Wethersfield state prison, until his release on parole in March, 1953.

In connection with his trouble and prior to his leaving the state and subsequent confinement, Daniel J. Leary made certain conveyances of real property, including one February 21, 1938, of land in Middlebury, Connecticut, to Frank Leary and his sister Margaret and one later of land in Florida to Frank

Leary. In 1944, while Daniel Leary was absent from this state, the plaintiff, Frank Leary, was elected president of Diamond Ginger Ale, Inc., and was thereafter re-elected to this office each successive year until 1953. The corporation lost much money in 1952.

About January 1, 1953, Daniel J. Leary was in prison at Wethersfield and eligible to parole. At said time the defendant Herman J. Weisman was attorney for Diamond Ginger Ale, Inc. Both the plaintiff, Frank A. Leary, and the defendant Daniel J. Leary owned or controlled substantial stockholdings in the corporation. Daniel J. Leary was placed on parole in March, 1953, and thereupon entered the employ of Diamond Ginger Ale, Inc.

### THE ISSUES

The plaintiff complains that during the period January 1, 1953, to August 13, 1953, "the defendants conspired to defraud the plaintiff of his control" of Diamond Ginger Ale, Inc., a Connecticut corporation, and to deprive him of the presidency of said corporation.

Certain specific acts are alleged to have been done pursuant to said plan of conspiracy. It is claimed the defendant Weisman (a) induced the plaintiff to have the annual meeting of the corporation called for February 2, 1953, postponed to April 29, 1953, and (b) induced the plaintiff to consent to have the secretary of the corporation sign a letter to the parole board, drafted by Weisman, seeking the release of the defendant Daniel J. Leary upon assurance said Daniel J. Leary would be employed by the corporation. After the release of Daniel J. Leary from prison, the complaint charges, both defendants, "pursuant to said plan of conspiracy," induced the adjournment of the April 29th meeting of the corporation to May 13, 1953.

At the meeting held on May 13, 1953, it is alleged by the plaintiff, the defendant Weisman "declared that the defendant Daniel J. Leary was in control of said corporation because he had proxies representing 10,500 shares of stock, when he knew this to be untrue," and, "[p]ursuant to said plan of conspiracy, the defendant, Daniel J. Leary, wrongfully asserted control of said corporation and subsequently had the plaintiff deprived of his office as president of said corporation."

There is further claim on the part of plaintiff that "pursuant to said plan of conspiracy, the defendant Daniel J. Leary, inspired state-wide publicity calumniating the plaintiff," and that plaintiff, upon the advice of the defendant Weisman, did not publicly defend himself.

The doing of the above described alleged acts is denied by the defendants. It thus appears that the real issues are limited to events happening in a short period of time, and covering a rather limited field.

The court has outlined the issues because the record is long and reflects the extreme bitterness of a battle between brothers, who have other lawsuits pending before the same referee for findings of facts, and the zeal of counsel, and covers a broad field of extraneous matter introduced and developed as "background." This evidence, offered largely without objection, was tolerated by the referee but is wholly irrelevant to the issue in this case.

The court has carefully read and reread the entire transcript. The exceptions which are taken to the report of the referee in the main are complaints about the alleged failure of the referee to include in his report findings of subordinate facts which are wholly irrelevant to the issue and which, even if it could be said they were undisputed or admitted facts, which they are not, would have no proper bearing on

the determination of any issue or cause of action alleged in this pending complaint.

With reference to plaintiff's specific exceptions to the report, the following is stated: Plaintiff claims the state referee erred in excluding plaintiff's exhibit Z for identification from the evidence. The offer was of two photostats of papers, identified by the plaintiff as photostats given to him by the defendant Daniel J. Leary, having a heading "Daniel J. Leary Cash Receipts Bank of Manhattan Co. New York—1938." The offer was of matter wholly irrelevant to the issues. The offer was made after plaintiff had rested, and during the testimony of the defendant Daniel J. Leary, but to support the testimony of Frank Leary given on cross-examination during the presentation of plaintiff's case, concerning which plaintiff's counsel said: "Now, I certainly think that I am entitled to prove whether or not the answers that were given then were true or not and this bears on that." The offer was objected to as having no relevancy, and for lack of "identification." The objections were sustained on both grounds. This ruling of the referee is believed to be correct. Exception is taken because the state referee did not include in his report a statement concerning said exhibit Z for identification, as a basis for determining the correctness of his ruling. The state referee should have made such a statement. However, the court has the whole record, has read it and is thus aware of all the circumstances, and is enabled to pass on the correctness of the ruling. The case should not be delayed by sending the matter back to the referee for a statement concerning a matter which is obvious.

Paragraph 3 of the exceptions complains because the referee did not make a finding as to plaintiff's claims of law in his arguments. The action of the referee was correct in this respect.

Paragraph 4 of the exceptions complains of a finding by the referee on conflicting evidence and is thus without merit.

Paragraph 5 of the exceptions complains of conclusions reached by the referee on the subordinate facts found. The findings objected to are really findings of ultimate facts based on conflicting testimony and are not matters for change by the court. The subordinate facts found support such ultimate facts or conclusions.

Paragraph 6 complains of the failure of the referee to find certain subordinate facts, in the background, covering the period 1919 to 1941, relating to Daniel J. Leary. The findings requested are not material or relevant to the issue in the case and were properly omitted. Other disputed facts relating to the conveyance by Daniel J. Leary to Frank and his sister on February 21, 1938, and where and how they got the money and what they did with the property were also properly omitted from the report by the referee. They are wholly irrelevant to the issue in the case, as well as being disputed matters.

The other findings requested by plaintiff are all of matters in dispute, not conceded, and not relevant or material. Even the amount of "salary" for Frank Leary during and at the end of his employment is in dispute. He was drawing $12,500 per year at the end and this could be added as conceded, but there were conflicting claims as to what he was to do with $60 per week of said money. The plaintiff has the burden of proving facts before the referee.

Paragraph 7 of the exceptions is without merit. After the filing of the motion to correct the report of the state referee, the referee considered the motion to correct, consulted the transcript of evidence and briefs of counsel and granted four of the corrections requested.

The eighth paragraph of the exceptions to the report refers to no specific findings of fact or failure on the part of the referee to find undisputed facts but makes an assertion that the report should not be accepted by the court on the ground that "the report is so manifestly the result of prejudice, bias and prejudgment that the report ought to be rejected." This challenge to the fairness and justness of the state referee has been carefully considered by the court. It is not supported by the record.

Because of the attack on the referee, the court feels constrained to state that on an examination of the whole record, if one allowed the claims of counsel for the plaintiff, even the broadest ones as to relevancy of certain background matters, there is no support for or evidence of conspiracy between the defendants to do any wrong to the plaintiff, and there is no evidence of the doing of any wrongful or tortious act by either of the defendants, alone or in concert, as alleged in the complaint.

In the event a further review is sought of the ruling by the referee on the admissibility of plaintiff's exhibit Z for identification, the following is believed to be a proper statement of such facts as are necessary to explain the ruling. The plaintiff, Frank Leary, had testified that in 1938 he and his sister purchased from the defendant Daniel J. Leary a tract of land in Middlebury, Connecticut, and that they had paid $9000 for it, contributing $4500 each. A warranty deed of said property dated February 21, 1938, from Daniel J. Leary to F. A. Leary and Margaret Braheney, his sister, had been offered in evidence as plaintiff's exhibit X. Thereafter Frank Leary, the plaintiff, being examined as a witness by his attorney, was shown a photostat of two pages, and when asked if they came from his possession stated they did. He described them as "a

pair of sheets recording the sale of the Middlebury property" and that they were photostats of his brother Dan's records. One page bore the heading "Daniel J. Leary Cash Receipts Bank of Manhattan Co.—New York 1938"; the other heading was "Daniel J. Leary—Analysis of cash receipts and disbursements from January 1, 1938-September 1, 1940." The following occurred: "By Mr. Lyman: Q.—Do you know whose records those are photostats of? A.—Yes. Q.—Whose? A.—My brother's, Dan's records. Q.—Where did you get them? A.— My brother, Dan, had given them to me. Q.—And whose writing is this in, if you know? A.—Dan Leary. Mr. Lyman.—I would like that marked for identification, if your Honor pleases. The Court.— It may be marked. [Two sheets, photostats, were marked 'Plaintiff's Exhibit Z for Identification.']"

Later plaintiff rested without offering the exhibit as evidence. Thereafter, during the testimony of the defendant Daniel J. Leary, he admitted the making of the conveyance and the receipt of the checks totaling $9000 ($4500 from each of the grantees) but claimed that the conveyance was really on advice of Florida counsel to get the property out of his name, that he had talked with Frank and his sister and they said they would put up $9000 to take it over and then they would return it to him when things got straightened out. He maintained he conveyed it with that understanding.

Daniel J. Leary was cross-examined at length about the above conveyance and then the following occurred: "By Mr. Lyman: Q.—Now, I show you Plaintiff's Exhibit Z for Identification, two photostats; do you recognize those? A.—I don't; they are probably all right, but I don't recognize them. Q.— Isn't that your handwriting on the first sheet? A.— This here? Q.—Yes. A.—It could be, but I'm not

sure. I wouldn't say it wasn't. Mr. Gager.—I can't hear the witness. The Witness.—I wouldn't say it was and I wouldn't say it wasn't. By Mr. Lyman: Q.—But you do say you do not recognize the sheets? A.—No, I don't recognize the sheets. Q.—You don't remember giving those sheets to Frank? A.—I don't recall. Q.—The originals from which that photostat was made? A.—I might have, but I don't recall it, no. Q.—Didn't you give that to him in order to help out with this business of getting your property where liens would not be put on it? A.— No, I don't believe so, no. This is my money, apparently, draft on Waterbury Trust, sale of stocks, $11,559.67; draft on Waterbury Trust, $36,468.73. Margaret Braheney, sale of stocks, $4,500. 1-74 Frank Leary property, Middlebury, $4,500. March 3, Aetna Insurance annuity, $21,206.85. Q.—Didn't you put down, somewhere, the original of those items for your own record? A.—I might have. Q.—Aren't they correct entries? A.—As far as I know, they are. Approximate cash disbursements for personal use, $70,000; total accounted for, $589,289.67; is that right? Q.—I believe that is what it says on the second page. A.—I think so. You don't think my father ever had ten or twelve thousand dollars of his own, do you? The Court.—He probably would not know. Mr. Lyman.—I did not know him that well. The Witness.—It would be a surprise to me if he did.

"Mr. Lyman.—I will offer this as a full exhibit. It has been identified by Mr. Frank Leary as papers given to him by Mr. Dan Leary, the first and second days of the hearing. Mr. Gager.—I object, your Honor, so far as my client, Mr. Weisman, is concerned; there seems to be no relevancy at all to any matters that are at issue between the plaintiff and my defendant. Mr. Lyman.—I would remind your Honor that the first part of the defense—I will withdraw that. In the cross-examination of Mr. Frank

Leary, at some length, if your Honor will remember, Mr. Gager, himself, went into all the details of this Lake transaction and other transactions that had nothing to do with his client's case. Now, I certainly think that I am entitled to prove whether or not the answers that were given then were true or not and this bears on that. [After some discussion:] Mr. McDonald.—I object to it also, your Honor. [After some discussion:] Mr. McDonald.—What I can't understand is that there is no signature on there at any place, as far as I can see. Mr. Lyman.—I do not claim that that is Dan Leary's signature. Mr. McDonald.—Is there any signature on there, Mr. Lyman? There is just the statement at the top. Daniel J. Leary. Anybody might have put it on. Mr. Lyman.—It was testified that it was produced from his custody. Mr. McDonald.—I object to it very strenuously; there is nothing on there, nothing that shows Dan Leary knows anything about that. There is no signature on there of Dan Leary. [There was then a citation of authorities by plaintiff and discussion and the following occurred:] The Court.—The objections by both defendants are sustained on the ground that neither of the cases cited are applicable to the question before us now. Mr. Lyman.—May I have an exception? The Court.—Exception may be noted. [Later the ruling of the court was amplified by the following:] The Court.—At this point, Mr. Taylor, let the record show that in addition to the reason given by me for denying the offer of Exhibit Z— it was denied on the ground that the cases cited were not applicable, and I want to add to that that I also deny it because it has not been sufficiently identified."

## CONCLUSION

The court finds that the state referee has not materially erred in his rulings, there are no material corrections in the finding, and there exist no suffi-

cient reasons why the report should not be accepted. The exceptions to the report of the state referee are not supported. The report of the state referee, as corrected, is accepted.

Judgment may enter forthwith for the defendants.